OPINION OF THE COURT
Frank A. Sedita, Jr., J.
*365 Is an adult "stepchild” living at the home of an insured "stepfather” excluded from coverage under a homeowner’s insurance policy which excludes "relatives * * * who live in the household”. The stepchild’s mother had died prior to the unfortunate carbon monoxide incident which gave rise to this case. A motion and cross motion focuses on this issue as well as a claim that the defendant insurance company properly disclaimed coverage due to alleged late notice.
We have found no case or statute on point and believe this to be a case of first impression. (Appleton v Merchants Mut. Ins. Co. [16 AD2d 361], which was cited as authority, is not on point. Appleton focuses on whether a member of a household who is away for military service is still a resident of the household for purposes of coverage. The policy in the Appleton case provided coverage for children of either spouse. Since the plaintiff "stepchild’s” mother still resided at the household he was potentially covered. The residency issue, not his status as a stepchild, was the focus of the case.)
Webster defines the word "relative” as meaning "a person connected by blood or marriage”. (Webster’s New Twentieth Century Dictionary [2d ed unabridged].) Black’s Law Dictionary defines "relative” as: "[a] kinsman; a person connected with another by blood or affinity”, and "affinity” is in turn defined as "[t]he connection existing, in consequence of marriage, between each of the married persons and the kindred of the other”. (Black’s Law Dictionary 1289, 59 [6th ed 1990].)
While ties of consanguinity (blood) do not end, ties of affinity end when the marriage tie is broken. (112 NY Jur 2d, Words and Phrases, at 54; 28 NY Jur 2d, Courts and Judges, § 107.)
Applying the above understanding of these terms to the issue before us, it would appear that a stepchild is a "relative” of his parent’s spouse by operation of "affinity” principles so long as the marital tie is unbroken. This principle was clearly applied in the Appleton case (supra) where the stepson’s mother was both living and still married to the policyholder.
In our case the plaintiff’s decedent was not a "relative” by blood or adoption, His status as a "relative” therefore depended upon his "affinity” with the policyholder as a result of the policyholder being married to his (the stepson’s) mother. Once his mother died, the marriage relationship ended, as did the bond of affinity between stepchild and stepfather.
The conclusion we must therefore draw from this analysis is that the decedent Alan Carey was not a "relative” of *366 decedent Charles Haug in applying the policy exclusion for "relatives * * * who live in the household”.
Having determined that decedent Carey was not excluded from coverage as a "relative” living in the household, we must next determine if the delay in notifying the defendant’s insurance carrier of the claim was a sufficient basis for the defendant to deny coverage. Said policy requires notice "as soon as practicable”.
It is undisputed that this unfortunate accident occurred on March 20,1994. Decedent Carey had lived with the policyholder for many years, and in fact was the primary heir under decedent Haug’s will. Decedent Carey was not a stranger or casual visitor at the household when he died. The executrix of the Haug estate makes the uncontroverted representation in her affidavit (attached to this motion) that she had no basis upon which to believe that a claim would be made by the Carey estate. She first received notice of a formal claim by the Carey estate in early January 1995, when she received a copy of a letter from the attorneys for the Carey estate to the attorneys for the Haug estate. On January 12, 1995, the defendant insurance carrier received notification of this claim from the plaintiff’s attorneys, and on January 27th the defendant disclaimed coverage.
Depending upon a few days allowance for mail delivery, the defendant was notified two or three days after the plaintiff was aware that a claim was being made.
After a review of the undisputed facts herein, we conclude that the failure of sooner notice was reasonably based upon ignorance of the existence of coverage or a possible claim by the Carey estate. Notification was given expeditiously as soon as there was knowledge of a claim. (70 NY Jur 2d, Insurance, §§ 1618, 1619; 875 Forest Ave. Corp. v Aetna Cas. & Sur. Co., 30 NY2d 726; Beach Haven Apts., No. 6 v Allcity Ins. Co., 182 AD2d 658; Argentina v Otsego Mut. Fire Ins. Co., 207 AD2d 816; E.T. Nutrition v Central Mut. Ins. Co., 201 AD2d 451; Merchants Mut. Ins. Co. v Hoffman, 56 NY2d 799.)
Accordingly, the motion of the plaintiff shall be granted and the cross motion of the defendant denied.
By disclaiming coverage, the defendant has created a conflict of interest. The plaintiff should be permitted to retain an attorney of her choice to defend the estate.